WILLIAM A. CAMPBELL, RECEIVER, APPELLANT, V. BEN P. MILLER ET AL., APPELLEES.

FILED MAY 3, 1905.   No. 13,754.

Evidence examined, and *held* to sustain the judgment of the district court.

APPEAL from the district court for Johnson county: JOHN S. STULL, JUDGE. *Affirmed.*

*L. C. Chapman* and *George A. Adams,* for appellant.

*S. P. Davidson, contra.*

LETTON, C.

This was an action to foreclose a mortgage. From a decree refusing foreclosure, setting aside the mortgage, and quieting and confirming the title to the property in the defendant, an appeal has been taken.

In October, 1901, the defendant, Ben P. Miller, purchased two lots in the city of Tecumseh, upon which was situated a livery barn. He borrowed part of the money used in the purchase from the Chamberlain Banking House. Two notes were given, one for $2,000, the other for $258.60, both secured by a mortgage on the premises given to Charles M. Chamberlain, who was the cashier of the bank. The $2,000 note was discounted by the Chamberlain Banking House to the Bank of Commerce of Kansas City, while the other note has remained in the bank. The $2,000 note was afterwards renewed, rediscounted at the same bank, and paid by the Chamberlain Banking House. Upon July 30, 1902, Miller and his wife executed to Charles M. Chamberlain a note and mortgage upon the same property to secure the payment of $2,258.60, and on August 18, 1902, the previous mortgage for the same amount was released upon the margin of the record by Charles M. Chamberlain, but the old notes were never surrendered to the defendant Miller. The plaintiff, appellant, contends that the note and mortgage executed upon July 30 were given in renewal of the debt to the bank evidenced by the former notes and mortgage, and that it is still due and unpaid; while the defendants claim that the prior mortgage debt was fully paid about the 20th day of July, 1902, and that the note and mortgage in controversy were executed without consideration, and for the purpose of allowing Charles M. Chamberlain, individually, to negotiate the same for the purpose of raising money for the defendant Miller to use in his business as a dealer in horses.

The only questions presented are questions of fact. It appears that the Chamberlain Banking House became insolvent in 1902, and Charles M. Chamberlain, its cashier,

thereafter absconded.   The plaintiff is now receiver of the bank.   In July, 1904, an individual came to Tecumseh in possession of this note and mortgage, and the receiver procured a search warrant to be issued, and thereby obtained possession of these papers.   The evidence as to the note and mortgage being given in renewal of the former debt is largely circumstantial.   S. M. True, who was the teller of the Chamberlain Banking House at the time, testifies to the facts with reference to the borrowing of the money from the bank in the first place, the renewals of the $2,000 notes, and the execution of the note and mortgage of July 30.   The facts which he relates, together with the entries in the books of the bank, tend to sustain the allegations of the plaintiff's petition.   Corroborating testimony to some extent is also afforded by the schedule of debts filed by the defendant Miller in a bankruptcy proceeding in the United States district court for the district of Nebraska.   On the other hand Miller himself, together with two other witnesses, positively testify to the payment at different times to Charles M. Chamberlain, as cashier, of money sufficient to discharge the mortgage debt to the bank, prior to the execution of the note and mortgage which it is sought to foreclose.   Miller testifies, in substance, that in 1901 and 1902 he was largely engaged in the business of buying and selling horses; that he had bought a large number of horses in Idaho, and had shipped them to Nebraska in July, 1902; that one Buffam was in charge of a car load of the horses at Fairbury; that Chamberlain was pressing him for payment of the debt to the bank, and that, in consequence of this, he directed Buffam to sell the horses, regardless of what they brought, as Chamberlain wanted his money. Buffam testifies that, under Miller's direction, he sold the horses and paid to Chamberlain for Miller $1,015, directing it to be applied upon the "barn note," and that he afterwards paid $350 more between the 20th and 25th of July for this purpose.   Miller testifies that with money derived from the sale of a number of horses at Firth, Nebraska, between the 17th and 22d of July, he paid to Chamberlain

$850 to apply on this debt, and that afterwards he paid
him $50 more. In this he is corroborated by the witness
Taylor, who details the circumstances attending the sale
of the horses at Firth, his delivery of the money for the
same to Miller, and his being with Miller in Tecumseh at
the time the money was paid to Chamberlain. He says he
asked True for the old notes, and True said Chamberlain
had put them away and he could not find them. Miller
further testifies that at the time he paid the debt to the
bank he had contracted for several shipments of horses
which were yet to come from Idaho, and that he was much
in need of money to pay for the horses when they arrived,
and carry on his business; that Chamberlain told him, if
he would execute another note and mortgage on the prop-
erty, that he believed he could negotiate the same and pro-
cure him the money to use in his business; that, relying
upon this promise, he executed the note and mortgage in
controversy, and never received any money therefor; and
that Chamberlain soon after went away, taking the note
and mortgage with him. It appears also that the note and
mortgage sued upon were never entered upon the books
of the Chamberlain Banking House as belonging to it,
while the prior note and mortgage were properly shown
thereon.

From a consideration of this evidence we believe that the
judgment of the district court is supported by the evi-
dence. Independent of the result reached by that court,
we are convinced that the defendant has sustained the al-
legations of his answer, and that the decree setting aside
the mortgage and dismissing the foreclosure proceedings
is fully justified by the evidence.

We recommend that the judgment of the district court
be affirmed.

AMES and OLDHAM, CC., concur.

By the Court: For the reasons stated in the foregoing
opinion, the judgment of the district court is

AFFIRMED.